UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Laurence Mitchell,                                        Case No. 3:20-cv-2772

             Plaintiff,

      v.                                              MEMORANDUM OPINION
                                                          AND ORDER

J. Schoen Enterprises, Inc.,

             Defendant.


## I.      INTRODUCTION

Plaintiff Laurence Mitchell brings two employment discrimination claims against his former employer Defendant J. Schoen Enterprises, Inc. ("JSEI"), one of religious discrimination under Ohio law and one of age discrimination under the Age Discrimination in Employment Act ("ADEA").  (Doc. No. 1).  Both Mitchell and JSEI now move for summary judgment of each of these claims.[1]  (Doc. Nos. 25, 26, and 27).  Each filed an opposition brief to their opponent's cross-motion.  (Doc. Nos. 28 and 29).

---

[1] Mitchell also moves for summary judgment of JSEI's counterclaims.  (Doc. No. 26 at 17-25).  In response, JSEI "agrees to an entry of dismissal" of these claims but does not specify whether the dismissal is with or without prejudice.  (Doc. No. 29 at 18).  But because JSEI chose to voluntarily dismiss these claims rather than defending them on the merits in the face of Mitchell's motion for summary judgment, I will conclude the dismissal is with prejudice and grant dismissal of these claims with prejudice under Federal Rule of Civil Procedure 21.  *See, e.g.*, *Bernard v. City of Cleveland*, No. 1:21-CV-1103, 2022 WL 4367655, at *1 (N.D. Ohio Sept. 21, 2022) (finding Rule 21 the proper procedural vehicle to voluntarily dismiss less than an entire action).  *Cf. Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited.").

## II.    BACKGROUND

JSEI is owned by Jonathan Schoen, (Doc. No. 26-3 at 5), and operates Cleaner & Dryer

Restoration & Construction, which provides cleaning, restoration, and construction services to

people with water and fire damage.  (Doc. No. 26-1 at 5-6).

On July 30, 2019, Schoen hired Mitchell as an Outside Project Manager shortly after

interviewing Mitchell in person.  (Doc. No. 26-1 at 6-7; Doc. No. 26-2 at 35-36, 38, 48, 109-10).

Specifically, Mitchell was hired on "a 60-day trial basis . . . to see if [he] blended, if [he] could work,

if [he] liked it, [if Schoen] liked me."  (Doc. No. 26-2 at 39-40).  Mitchell affirmed his understanding

that he was promised continued employment if "things worked out" during that 60-day

probationary period.  (*Id.* at 40).

At the start of his employment, Mitchell testified things were "crazy."  (*Id.* at 56).  As one of

three Outside Project Managers for JSEI at the time, Mitchell was responsible for meeting with

clients and managing repairs by either doing them himself or overseeing in-house carpenters or

outside subcontractors.  (Doc. No. 26-1 at 7-8; Doc. No. 26-2 at 63-64).  When he started, Mitchell

alleges his supervisor, Ryan Gabel, immediately assigned him "nine or ten jobs that were started by

the guy they let go [and were already] over budget."  (Doc. No. 26-2 at 56; *see also* Doc. No. 26-1 at

8; Doc. No. 26-2 at 54).  Mitchell was not given a company phone or vehicle and had to use his

own.  (Doc. No. 26-2 at 56).  Mitchell was also given only one wearable company shirt.  (*Id.* at 61).

Despite the "hectic" start, Mitchell worked 8:00 a.m. to 5:00 p.m. Monday through Friday

and occasionally on Saturday mornings and completed those first jobs.  (*Id.* at 56-57).  Within those

first few weeks, Mitchell was also given a company phone.  (*Id.* at 57).  Eventually, he was given a

pickup truck with the company logo to use but continued to use his own vehicle because the

company truck had "no defroster, . . . the windows didn't go up, [and it had] no place for [him] to

unload [his] tools and load [his] tools."  (*Id.* at 67-68).  He did not receive any more wearable shirts

2

so he "kept [the single wearable shirt] in [his] vehicle and . . . would put [it] on when [he] would go

visit somebody to have them sign a contract."  (*Id.* at 61).

Though some issues were resolved, new ones arose.  Mitchell was having trouble adjusting

to the specific procedures JSEI used to communicate about and schedule projects.  For example, for

the first few weeks of his tenure, Mitchell sent photographs of his worksites directly to Gabel's email

before he learned how to upload the photos to an app on this phone in the manner preferred by the

office manager, Brandy Walker.  (*Id.* at 57-58).  Walker was also concerned about Mitchell keeping

his own schedule rather than allowing administrative staff to schedule his appointments through

JSEI's Google calendar system.  (Doc. No. 26-1 at 9, 12-13).  Mitchell acknowledged JSEI "wanted"

to schedule his appointments in this way from the time he was brought on but testified this method

"did not work for him":

> So Dana, who was only there a few weeks who was my representative who took care
> of scheduling, her, she and I worked it out where if she gives me the phone number
> I'll schedule my own appointment and she'll put it in her computer and put it on the
> calendar.  And that's the way it worked.  And when Dana left and Crissy took over
> and Crissy did the exact same thing without any problem.

(Doc. No. 26-2 at 60).

Even with these procedural issues, Mitchell claims he "never got disciplined for anything

[he] did at Cleaner Dryer."  (*Id.* at 85).  He asserted Gabel "was always complimenting [him and]

asking [his] thoughts on stuff" and that he "had no criticisms from anybody."  (*Id.* at 61).  Relatedly,

Mitchell remained employed by JSEI after the 60-day probationary period had expired.  JSEI does

not refute Mitchell's claim that he was never disciplined but does set forth Schoen's testimony that

he had received complaints about Mitchell from both Gabel and Walker.  (Doc. No. 26-1 at 13, 22).

Though the picture of Mitchell's three-and-a-half-month employment with JSEI is not

completely clear, it is undisputed that on November 14, 2019, Schoen called Mitchell into his office

and fired him.  (*Id.* at 8; Doc. No. 26-2 at 94).  Of this meeting, Schoen recalled:

> I asked him to come back into my office and, ah, I told him that, you know, we were going to go in a different direction and he was not going to be part of that.
>
> . . .
>
> [H]e kept telling me he wanted to know why.  And he wouldn't stop, he just kept saying it and I kept saying just not a good fit.  And then we just – he just kept going and going and going and I was like okay, fine, you want a reason, fine, it was the numbers.  And he's like well, let me see the numbers and I'm like I don't have the numbers, you're just not a good fit.  He just kept badgering me for a reason and I said that at that point but he just, he just wouldn't leave my office.

(Doc. No. 26-1 at 14).  Mitchell concedes to asking Schoen for a reason possibly more than once but asserts he did not "badger" Schoen.  (Doc. No. 26-2 at 144).  Mitchell also confirmed Schoen provided him with this "numbers" reason in response to his inquiries.  (*Id.* at 29).

On November 25, 2019, Mitchell filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC") based on his termination, checking the box for "age" discrimination;[2] he was 62 years old at the time of discharge.  (Doc. No. 1-1; *see also* Doc. No. 26-2 at 65).  When responding to Mitchell's Charge, Schoen explained Mitchell was terminated because:

> 1. He was not communicating with other employees well
> 2. He would not wear a company shirt
> 3. He would not drive the decal-led company truck
> 4. He was not using the company app on his phone for pictures and notes
> 5. No one wanted to talk to him. Everyone felt on edge due to his attitude that he did what he wanted when and how he wanted.
> 6. He would not allow the administrative staff to schedule his daily calendar. This is done for the other 2 OPM's so we know what they are doing and we can schedule customers when they need them.
> 7. He was making agreements with clients and setting the price without asking his estimator or getting approval on the price. - Attached (output)

---

[2] Mitchell also checked the box for "retaliation" and set forth allegations that he was retaliated against because he "would not lie for management."  (Doc. No. 27-6 at 1).  Although Mitchell briefly references these allegations in his Complaint, (Doc. No. 1 at 2), he does not pursue any claim related to this theory.  Further, neither party relies on evidence related to this matter to support or defeat the motions their motions for summary judgment.  For example, JSEI does not allege it did not fire Mitchell for a discriminatory reason but because he "would not lie for management." (Doc. No. 27-6 at 1).  Accordingly, the evidence on this front is irrelevant to my analysis of either motion, and I decline to address it further at this time.

> I did not tell him these when he was in my office because of the way he handles himself. He asked me if it was because of his numbers and [I] said 'sure'. He then did ask what his numbers were and [I] did not know. I did not want to tell him that nobody wanted him around anymore and that he was not a team player.
>
> He was not a good fit with our team and therefore was let go.

(Doc. No. 27-6 at 50). Schoen later offered testimony to the same effect. (*See* Doc. No. 26-1.)

On October 20, 2020, the EEOC issued a right to sue letter, (Doc. No. 1-2), and Mitchell subsequently filed this action. (Doc. No. 1). Although Mitchell did not check the "religion" box on the OCRC Charge and stated no allegations related to religion, (*see* Doc. No. 1-1), he stated a claim for religious discrimination, alleging Schoen terminated him because of Mitchell's Jewish faith. (Doc. No. 1 at 3-5). In support of this claim, Mitchell testified Schoen, who "would start off [monthly meetings] with a very lengthy prayer and thanking Jesus for everything and Jesus being in your life," (Doc. No. 26-2 at 83-84), overheard a conversation between Mitchell and Gabel wherein Mitchell's Jewish faith was mentioned one week before Schoen terminated Mitchell and remarked, "I didn't know you were Jewish." (*Id.* at 108). For his part, Schoen admits, "[t]here was one meeting a month . . . where I would open in [Christian] prayer." (Doc. No. 26-1 at 15). But he denies having terminated Mitchell because of his Jewish faith and testified, "I didn't even know what [Mitchell's] faith was." (*Id.* at 16-17).

At this juncture, both Mitchell and JSEI move for summary judgment on both claims.

## III.     STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the

nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

With respect to burden, the moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.

Once the movant meets this burden, the opposing party cannot rest on its pleadings or merely reassert its previous allegations but "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).

"This standard of review remains the same for reviewing cross-motions for summary judgment."  *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021).  That is, "where, as here, the parties filed cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (internal quotation marks and further citation omitted).

Ultimately, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. ANALYSIS

Mitchell alleges JSEI terminated him: (1) because of his religion in violation of Ohio Revised Code § 4112.02(A); and (2) because of his age in violation of the ADEA, 29 U.S.C. § 623(a)(1).

As an initial matter, I briefly discuss Mitchell's Ohio law religious discrimination claim. Mitchell correctly notes, "[t]he Supreme Court of Ohio has repeatedly held that 'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42 U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'" (Doc. No. 26 at 15 n.4 and Doc. No. 28 at 7 n.2 (both quoting *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm'n*, 575 N.E.2d 1164, 1167 (1991)) (further citation omitted)). But, unlike Title VII, which has long required plaintiffs to timely file a charge with the EEOC, 42 U.S.C. § 2000e-5(e), Ohio did not have an exhaustion requirement until April 2021. *See Smith v. Lorain Cnty. Veteran's Serv. Comm'n*, No. 1:21-cv-01525, 2024 WL 1375946, at *7 (N.D. Ohio Mar. 30, 2024) ("Ohio Revised Code Section 4112.052(B)(1)(a), which became effective in April of 2021, added an exhaustion requirement to Ohio's disability discrimination statute, where there was none previously, requiring a party to first file a charge with the Ohio Civil Right Commission.").

Ohio's April 2021 exhaustion requirement has no bearing on this action brought in December 2020 and based on November 2019 events. *See, e.g., Smith*, 2024 WL 1375946, at *7. Therefore, I reject JSEI's vague arguments related to Mitchell's failure to check the "religion" box on his OCRC Charge. (Doc. No. 27-1 at 18; Doc. No. 29 at 17). Concluding the analysis of the points on which Ohio law differs from Title VII, I will now apply Title VII precedent when

evaluating the merits of Mitchell's religious discrimination claim as both parties have done in their briefing.

Because Mitchell seeks to prove each of his employment discrimination claims by circumstantial evidence, both are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hudson v. City of Highland Park*, 943 F.3d 792, 802 (6th Cir. 2019) (religious discrimination); *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (age discrimination). "Under this framework, the employee first has the burden of proving a prima facie case of . . . discrimination; if he is successful, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the allegedly discriminatory action. Finally, the employee bears the burden of proving that the employer's justification is pretext for discrimination." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014).

## A.  PRIMA FACIE BURDEN

As a general matter, to satisfy his prima facie burden on a claim of discrimination, the employee plaintiff must show:

> (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).[3]

Here, JSEI concedes that Mitchell can satisfy the first and third elements with respect to both claims because Mitchell is Jewish, was terminated, and was over 40 at the time of his termination. (Doc. No. 27-1 at 13-14, 15; Doc. No. 29 at 10, 13). Further, for purposes of

---

[3] *Swierkiewicz* articulated these general elements in a case similar to this case where the employee brought a claim under both Title VII and the ADEA. 534 U.S. at 509-10. In its analysis, the Court cited: *McDonnell Douglas*, 411 U.S. at 802; and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54, n. 6 (1981). Both stand for the position that the prima facie standard "is not inflexible" and will depend on the factual situation presented. *Burdine*, 450 U.S. at 253 n.6 (citing *McDonnell Douglas*, 411 U.S. at 802 n.13).

summary judgment, JSEI "assumes" Mitchell was qualified for the position. (*Id.*). But JSEI contends Mitchell cannot satisfy the fourth element with respect to either claim.

### 1. Religious Discrimination

Mitchell first seeks to satisfy the fourth element by showing he "was treated differently from a similar employee who does not belong to his protected class." *Hudson*, 943 F.3d at 802. In doing so, he argues the two other Outside Project Managers were treated better than he was. (Doc. No. 26 at 16). But Mitchell points to no evidence of their religion. (*See* Doc. No. 26 at 16-17; Doc. No. 28 at 8-9). Without such evidence, he cannot show he was treated differently than a "similar employee *who does not belong to his protected class*." *Hudson*, 943 F.3d at 802 (emphasis added).

Implicitly conceding this shortcoming, Mitchell offers evidence to support an alternate legal theory found in Eleventh Circuit precedent that would allow him to sidestep *McDonnell Douglas* entirely. (Doc. No. 28 at 9-10 (citing *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019))). Mitchell cites no case within the Sixth Circuit, including Ohio state courts, that has adopted or discussed this legal theory and offers no legal argument to convince me application of this theory would comport with precedent binding on this court. Even so, Mitchell need not rely on this out-of-circuit precedent.

As the Sixth Circuit has recognized, "the Supreme Court has repeatedly instructed us that the prima-facie-case requirement is not 'an inflexible rule' and instead may vary under particular factual circumstances." *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1064 (6th Cir. 2022) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (further quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)) and citing *McDonnell Douglas*, 411 U.S. at 802 n.13)). To satisfy the fourth element, the plaintiff must show "circumstances that support an inference of discrimination," *Swierkiewicz*, 534 U.S. at 510, by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under [Title VII]." *Int'l*

*Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977).  Ultimately, "[t]he prima facie requirement for making a Title VII claim 'is not onerous,' *Burdine,* 450 U.S. at 253, . . . and poses 'a burden easily met.' *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987)." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000).

Mitchell suggests a reasonable jury could infer Schoen's decision to terminate him was motivated by his religion, citing his own testimony to show he was terminated only one week after Schoen allegedly commented, "I didn't know you were Jewish."  (Doc. No. 26-2 at 108; Doc. No. 26 at 16-17; Doc. No. 28 at 9).  Aside from this, Mitchell also cites as evidence his testimony that Schoen was Catholic and "would start off [monthly meetings] with a very lengthy prayer and thanking Jesus for everything and Jesus being in your life."  (Doc. No. 26-2 at 83-84, 144).  Schoen admitted, "There was one meeting a month . . . where I would open in prayer."  (Doc. No. 26-1 at 15).  But he denies having terminated Mitchell because of his Jewish faith; in fact, he testified, "I didn't even know what [Mitchell's] faith was."  (*Id.* at 16-17).

A reasonable jury viewing this evidence in the light most favorable to JSEI could infer Schoen did not know that Mitchell was Jewish and, therefore, could not have terminated Mitchell based on his Jewish faith.  As such, Mitchell's motion for summary judgment of his religious discrimination claim must be denied.  *Cf. Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 444 (6th Cir. 2002) ("[T]o establish . . . there is a nexus between the employee's pregnancy and the adverse employment action, the employee bears the burden of demonstrating that the employer had actual knowledge of her pregnancy at the time that the adverse employment action was taken.").

Switching hats, a reasonable jury viewing the evidence in the light most favorable to Mitchell could likewise find in his favor.  Schoen was Catholic and, according to Mitchell, terminated Mitchell only one week after learning Mitchell was Jewish.  From this close temporal proximity, the factfinder could draw the inference in Mitchell's favor that Schoen's decision to terminate Mitchell was

motivated by Mitchell's Jewish faith. *Cf. Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (concluding a temporal proximity of two months between the announcement of an employee's pregnancy and her termination was "sufficient to establish a link . . . for the purposes of a prima facie case" of pregnancy discrimination). Therefore, Mitchell's religious discrimination claim clears the first hurdle to surviving JSEI's motion for summary judgment.

### 2. Age Discrimination

Mitchell asserts he can satisfy his prima facie burden with respect to the age discrimination claim by showing he was replaced by someone younger. The Sixth Circuit has concluded "[a]n allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination . . . if the difference in age is significant." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). It has also set forth a general rule that age differences of more than six years are considered sufficiently "significant." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003).

Mitchell offers evidence in the form of JSEI's Amended Answer. (*See* Doc. No. 28 at 11). There, in response to Mitchell's Complaint allegation that, "Upon information and belief, Plaintiff was replaced by a person more than 11 years younger than Plaintiff," (Doc. No. 1 at 6), JSEI answered: "Defendant admits that a 51-year-old employee was hired as project manager after Plaintiff was terminated."[4] (Doc. No. 15 at 5).

JSEI urges me not to consider this admission as a binding admitted fact, alleging its Amended Answer is "an unverified statement that was drafted by Defendant's legal counsel[,] is not

---

[4] JSEI admitted the same in its original Answer. (Doc. No. 7 at 5).

a sworn statement[,]" and should be "construed so as to do justice" in accord with Rule 8(e).  (Doc. No. 29 at 10).  These arguments are hardly persuasive.

One of the fundamental principles of representative litigation is that "clients must be held accountable for the acts and omissions of their attorneys."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993).  Consistent with this, it is well-settled that a party is bound by factual admissions certified by its counsel in its answer, as "Rule 11 of the Federal Rules of Civil Procedure requires the lawyer to certify that the allegations made in pleadings are grounded in fact, based on reasonable inquiry."  *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986).

To the extent that JSEI argues evidence acquired through discovery should negate the admission in the Amended Answer, I note that "[a] party is permitted to amend its pleadings. . . . Pleadings only become admissions if they have not been so amended."  *Garavaglia v. C.I.R.*, 521 F. App'x 476, 482-83 (6th Cir. 2013).  "Factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them."  *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (citation omitted); *see also EEOC v. Pines of Clarkston*, No. 13-CV-14076, 2015 WL 1951945, at *4 (E.D. Mich. Apr. 29, 2015) ("[J]udicial admissions are binding unless withdrawn even when contradicted by later produced evidence.").

JSEI did not seek leave to file a Second Amended Answer after acquiring the evidence it now asks me to consider.  And it cannot further amend its Amended Answer now via its opposition brief to summary judgment.  *Accord Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("To permit a plaintiff to [effectively amend the complaint via argument in its opposition brief to summary judgment] would subject defendants to unfair surprise.").  JSEI is bound by the Amended Answer's admission that Mitchell was replaced by a 51-year-old project manager upon his termination.  (Doc. No. 1 at 6; Doc. No. 15 at 5).

Mitchell was 62 years old when he was terminated – 11 years older than his 51-year-old replacement.  Even a reasonable jury viewing the evidence in the light most favorable to JSEI could not ignore this admission and conclude otherwise.  JSEI's binding admission thus suffices to establish Mitchell was replaced by someone significantly younger for purposes of both motions for summary judgment.

Ultimately, "[JSEI] voluntarily chose this attorney as [its] representative in the action, and [it] cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962).  Mitchell has satisfied his prima facie burden with respect to his age discrimination claim.

### B.    PRETEXT

JSEI sets forth the following as its legitimate, non-discriminatory reasons for terminating Mitchell: "he was not a good fit for the company, he did not follow company rules, he lacked communication with the office manager." (Doc. No. 27-1 at 17).  Specifically, JSEI asserts Mitchell "wouldn't allow administrative staff to schedule appointments through Google calendar[, and] would not wear a uniform or drive the company vehicle." (*Id.*).  Mitchell does not dispute that JSEI can satisfy its step two burden with these reasons, (Doc. No. 28 at 12), and therefore reassumes the burden by now having to show "pretext—i.e. that the employer's explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

A plaintiff typically shows pretext in one of "three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* at 400.  The Sixth Circuit has cautioned against formal application of these three categories, having noted that the categories "are simply a 'convenient way of marshaling evidence and focusing it on the ultimate inquiry: "did the employer fire the employee for the stated reason or not?"'" *Miles v. S. Cent. Hum.*

*Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Tingler v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (further quoting *Chen*, 580 F.3d at 400 n.4)). More to the point, "at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen*, 580 F.3d at 400 n.4. "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993) (internal quotation marks and citation omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Before considering the evidence Mitchell offers to satisfy his pretext burden, I will briefly address JSEI's assertion that it "is entitled to an inference against age discrimination" because Schoen both hired and fired Mitchell. (Doc. No. 27-1 at 18-19; Doc. No. 29 at 17-18). Mitchell does not dispute the fact that Schoen hired and fired him. (Doc. No. 28 at 14). But he contends this fact alone does not warrant summary judgment in JSEI's favor. (*Id.* at 14-15).

The Sixth Circuit has "adopted the same-actor inference, 'which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee.'" *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 572 (6th Cir. 2003) (en banc) (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995)). But it has "reject[ed] the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual." *Wexler*, 317 F.3d at 573. With this, it held that "where . . . the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." *Id.* at 573-74.

JSEI invokes the same-actor inference both to support its own motion for summary judgment and to defeat Mitchell's motion. (Doc. No. 27-1 at 18-19; Doc. No. 29 at 17-18). At this juncture, because I have not yet determined whether Mitchell has "otherwise raised a genuine issue

of material fact," *Wexler*, 317 F.3d at 574, I consider only whether the same-actor inference can be used to defeat Mitchell's motion.  Indeed, it can.  A factfinder viewing the evidence in the light most favorable to JSEI could justifiably draw the same-actor inference in JSEI's favor and conclude Schoen did not terminate Mitchell because of his age after personally hiring him only three and a half months prior.  Therefore, Mitchell's motion for summary judgment is denied as to his claim of age discrimination. [5]

I now set aside the same-actor inference and evaluate whether Mitchell can defeat JSEI's motion for summary judgment by setting forth sufficient evidence, which a factfinder could view in his favor and justifiably infer that JSEI's articulated reasons for terminating him were "pretext designed to mask discrimination."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

To satisfy his burden on this front, Mitchell first asserts a reasonable jury could infer pretext from evidence showing: (1) "the 'reason' for [his] termination shifted a couple of times"; and (2) the reason Schoen gave him at the time of termination – "numbers" – was not based in fact and did not motivate Schoen's decision to terminate him.  (Doc. No. 28 at 13).  JSEI does not contest the second point and admits the "numbers" reason given to Mitchell at the time of termination was neither grounded in fact nor the reason Schoen actually terminated Mitchell.  (*See* Doc. No. 27-1 at 7, 17 (citing Doc. No. 26-1 at 14, 20); Doc. No. 29 at 15).

But JSEI contends this should be excused because Schoen "did not originally disclose the reason for its termination of Plaintiff to spare his feelings."  (Doc. No. 29 at 15).  It further argues that because "Schoen, during the OCRC investigation and this litigation, has been consistent in his stated reasons for terminating Plaintiff[, t]here is no evidence of a 'shifting' justification for

---

[5] As discussed above, Mitchell's motion was denied as to his religious discrimination claim because he failed to satisfy his prima facie burden.

15

Defendant's termination of Plaintiff." (*Id.* at 16 (citing Doc. No. 27-6 at 10-11, 50)). JSEI misunderstands the law of this Circuit.

The Sixth Circuit has held "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). This is because "[s]hifting justifications over time calls the credibility of those justifications into question." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). Even so, "'providing *additional*, non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications.'" *Miles*, 946 F.3d at 891 (quoting *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012)) (emphasis in original).

There is no dispute that "[w]hen the justification for an adverse employment action changes *during* litigation, that inconsistency raises an issue whether the proffered reason truly motivated the defendants' decision." *Cicero*, 280 F.3d at 592 (emphasis added). But contrary to JSEI's position, it is not merely the justifications given "*during the course of . . . litigation*" or given to a government agency in the face of impending litigation that matter. (Doc. No. 29 at 16) (emphasis in original). Instead, the Sixth Circuit has concluded that even shifting justifications during the discharge process itself (i.e., *before* litigation) can serve as evidence of pretext.

For example, in *Pierson*, the employer's decisionmaker first identified the employee's position when asked "to identify positions under their supervision that could be eliminated without hardship to the company." 749 F.3d at 533. Then, the decisionmaker explained to human resources and others that the employee would be discharged "in part" because of the employee's "failure to be a 'team player.'" *Id.* But, at the time of discharge, the decisionmaker told the employee he "was being terminated as part of a reduction in force [and] did not mention that the termination was a result of poor teamwork or any other performance issue." *Id.* Finally, when the employee "later inquired

about appealing the termination decision, a company representative told him that 'the decision [was] . . . based on performance not age.'" *Id.* at 541. The court concluded, "Although it is possible that [the decisionmaker] had [the employee's] allegedly poor teamwork in mind when he initially selected him for termination, and that both reasons played a role in [the employee's] discharge, a reasonable jury could conclude that [the decisionmaker] shifted the reasons for his decision over time. Such shifting justifications raise an inference that the proffered reasons are false and are pretext for discrimination." *Id.*

Because it is well-settled that reasons given at discharge may be considered when determining whether an employer has given shifting justifications, I reject JSEI's argument to the contrary. While JSEI's proffered reasons would not be considered "shifting justifications" if they are "*additional*, non-discriminatory reasons that do not conflict with the one stated at the time of discharge," JSEI fails to make this showing. *Miles*, 946 F.3d at 891 (emphasis in original).

There is no dispute that the reason "stated at the time of discharge," *id.*, was "numbers." (*See* Doc. No. 26-1 at 14, 20). Because JSEI no longer offers that "numbers" reason, the reasons offered now cannot be considered "*additional*, non-discriminatory reasons [to] the one stated at the time of discharge." *Miles*, 946 F.3d at 891 (emphasis in original). In other words, because JSEI seeks to replace its reason "stated at the time of discharge" rather than add to it, these replacement reasons are "shifting justifications." *Id.*

A reasonable jury viewing JSEI's shifting justifications in the light most favorable to Mitchell and drawing all inferences in his favor could conclude the reasons proffered now and to the OCRC in the face of Mitchell's Charge are false and are a pretext for discrimination. Schoen admits he offered Mitchell the false "numbers" reason when faced with Mitchell's "badgering" to get Mitchell to leave his office. (Doc. No. 26-1 at 14). Viewing this in the light most favorable to Mitchell, a

reasonable jury could draw the inference that Schoen also offered false reasons to the OCRC when faced with Mitchell's Charge to avoid disclosing the true reason for terminating Mitchell.

While a factfinder could infer pretext from JSEI's shifting justifications alone, I will also consider Mitchell's additional argument that the reasons proffered by JSEI now did not actually motivate Schoen's decision to terminate him.  (*See* Doc. No. 26 at 14-15; Doc. No. 28 at 13-14). With this, Mitchell does not challenge whether these reasons are based in fact but suggests that, even assuming they are, they did not motivate Schoen's decision to terminate him.  (Doc. No. 27-1 at 17).  In response, JSEI maintains these reasons are based in fact.  (Doc. No. 29 at 16).  But in doing so, JSEI inadvertently proves Mitchell's point.

JSEI is correct in stating Mitchell admitted he did not follow the company procedures and protocols allegedly in place.  (Doc. No. 29 (citing Doc. No. 26-2 at 60-61, 67)).  Mitchell admitted he did not wear his only company shirt every moment on the job as allegedly required but "kept [it] in [his] vehicle and . . . would put [it] on when [he] would go visit somebody to have them sign a contract."  (Doc. No. 26-2 at 61).  Mitchell admitted he would not drive the company truck available to him.  (*Id.* at 67).  And Mitchell admitted he would not allow administrative staff to schedule his appointments, even though he knew "that is the way they wanted it to work."  (*Id.* at 60).

But he was doing all of these things from the start of his employment and was never disciplined for any of these alleged infractions during the three and a half months preceding his termination.  Instead, JSEI continued to employ him even after the 60-day probationary period had elapsed.

Because JSEI allowed to Mitchell to continue each of these behaviors unchecked for months, a reasonable jury could draw the inference in Mitchell's favor that Schoen did not suddenly decide to terminate Mitchell because of any or all of these reasons.  Relatedly, while none of Mitchell's behaviors were new at the time of his termination, based on Mitchell's account of the

facts, Schoen's knowledge of Mitchell's religion was relatively new.  From this temporal proximity, a reasonable jury could infer these reasons were a pretext designed to mask religious discrimination.

Mitchell has set forth evidence to raise a genuine dispute of material fact as to whether Mitchell was actually terminated for the reasons JSEI proffers now.  Further, as discussed above, a genuine dispute of fact exists as to whether these reasons were pretext for *religious* discrimination.  But outstanding is whether a genuine dispute of fact exists as to whether these reasons were a pretext for *age* discrimination under the ADEA.

Unlike claims under Title VII where the plaintiff need not prove that religion, for example, was the only cause of the termination, the ADEA requires the plaintiff to show "age was *the* determinative reason they were terminated."  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (emphasis in original).  Even at the final pretext stage of the *McDonnell Douglas* framework, "the ultimate burden of persuasion remains on the plaintiff to demonstrate that age was the 'but-for' cause of their employer's adverse action."  *Provenzano*, 663 F.3d at 812.  To satisfy this burden, the plaintiff must set forth sufficient evidence to raise a genuine dispute of fact as to whether "age '*had a determinative influence on the outcome*' of the employer's decision-making process."  *Pelcha*, 988 F.3d at 324 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)) (emphasis added by *Gross*) (further citation omitted).

The evidence Mitchell offers to satisfy this burden consists of JSEI's admission that it replaced Mitchell with someone who was 51 years old as well as his testimony that he was treated less favorably than the two other Outside Contract Managers, who were at least ten years younger than him.  (Doc. No. 28 at 11 (citing Doc. No. 26-2 at 64-66)); *see Provenzano*, 663 F.3d at 812 ("In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage.").  Specifically, Mitchell testified neither of these two were terminated, even though he observed one

19

not wearing his company shirt on a job and knew that the other had made serious errors on jobs. (Doc. No. 26-2 at 64-66).

A plaintiff can show pretext on disparate treatment by "provid[ing] evidence that 'employees outside the protected class[ ] were not disciplined even though they engaged in substantially identical conduct to that which [the employer] contends motivated its discipline [of the plaintiff].'" *Pelcha*, 988 F.3d at 328 (quoting *Miles*, 988 F.3d at 893) (altered by *Pelcha*). "In examining another employee outside the protected class, we consider whether the employee: (1) 'dealt with the same supervisor,' (2) was 'subject to the same standards,' and whether they (3) 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Pelcha*, 988 F.3d at 328 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Even viewing the evidence Mitchell offers in the light most favorable to him, a reasonable jury could not infer pretextual disparate treatment. That is, the only "substantially identical" conduct alleged is that one of the two younger Outside Contract Managers also did not wear his company shirt. But Mitchell offers no evidence to suggest that individual also engaged in all of the other conduct for which Mitchell was allegedly terminated. Without such similarity, age cannot be isolated as the reason Mitchell was terminated while the other two were not. The factfinder could not justifiably infer Mitchell was terminated because of his age while the other two were retained without something more.

The only "more" offered is JSEI's admission that Mitchell was replaced by someone substantially younger. This evidence was sufficient to satisfy Mitchell's prima facie burden: that he *was* replaced by someone substantially younger. But it is not sufficient to show JSEI terminated Mitchell *to* replace him with someone substantially younger. Mitchell offers no evidence to suggest "age '*had a determinative influence on the outcome*' of [JSEI's] decision-making process." *Pelcha*, 988 F.3d

at 324 (quoting *Gross*, 557 U.S. at 176) (emphasis added by *Gross*).  That is, Mitchell sets forth no evidence to show Schoen, Gabel, Walker, or anyone else demonstrated any age bias against him or anyone else at JSEI during his employment such that anyone would have sought to replace him because of his age.

Ultimately, "even when *direct* evidence of age discrimination has been offered, the question to be asked in deciding an employer's motion for summary judgment is whether the evidence, taken as a whole and in the light most favorable to plaintiff, is sufficient to permit a rational trier of fact to conclude 'that age was the "but-for" cause of the challenged employer decision.'"  *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 532 (6th Cir. 2014) (quoting *Gross*, 557 U.S. at 178) (emphasis added).  Mitchell has offered evidence showing the reasons proffered by JSEI here were not the reason he was terminated.  But he has not offered evidence to raise "a genuine dispute of material fact that, if resolved in [his] favor, could persuade a reasonable juror that age *was* the but-for cause of [his] termination."  *Pelcha*, 988 F.3d at 324 (emphasis added).  Therefore, JSEI must be granted summary judgment of Mitchell's ADEA claim.[6]

---

[6] While Mitchell "otherwise raise[ ] a genuine issue of material fact" as to whether JSEI's proffered reasons were the reason Mitchell was terminated, he did not do so with respect to whether those reasons were pretext *for age discrimination* under the ADEA.  *Wexler*, 317 F.3d at 573-74.  Accordingly, the same-actor inference could be drawn to further support JSEI's entitlement to summary judgment here.

## V.    CONCLUSION

For the foregoing reasons, I deny Mitchell's motion for summary judgment, (Doc. No. 25),

but dismiss with prejudice JSEI's counterclaims against Mitchell.  Further, I grant in part and deny in

part JSEI's motion for summary judgment.  (Doc. No. 27).  Specifically, JSEI's motion is granted as

to Mitchell's age discrimination claim under the ADEA.  But it is denied as to Mitchell's Ohio law

religious discrimination claim.


So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
